**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS DOPORCYK, individually, and on** | ) | |
| **behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 17-cv-05250** |
| | ) | |
| **v.** | ) | |
| | ) | **Hon. Thomas M. Durkin** |
| **ROUNDY'S SUPERMARKETS, INC., and** | ) | |
| **ROUNDY'S ILLINOIS, LLC, d/b/a** | ) | |
| **MARIANO'S, THE KROGER COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS AND**
**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Plaintiff Thomas Doporcyk, by and through his counsel, responds to Defendants' Rule 56.1(a)(3) Statement of Material Facts in Support of their Motion for Summary Judgment on Counts I and II as follows:

**INTRODUCTORY STATEMENT**

Defendants' L.R. 56.1(a)(3) statement of material facts is inappropriate, improper, and not in compliance with L.R. 56.1(a)(3). Several paragraphs contain legal arguments, even more do not address material facts, and almost all contain multiple assertions per paragraph. "[A] movant's 56.1(a) statement should contain *only* factual allegations." *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (emphasis in original). "It is inappropriate to allege legal conclusions in a 56.1(a) statement on the off-chance that one's opponent might not file a correct response." *Id*. "Additionally, the 56.1(a) statement should be limited to *material* facts, that is, facts pertinent to the outcome of the issues identified in the summary judgment motion." *Id*. (emphasis in original).

Further, "the numbered paragraphs…should contain only one or two individual allegations, thereby allowing easy response." *Id.* "Again, it is inappropriate to confuse the issues by alleging multiple facts in a single paragraph in hopes of one's opponent missing one." *Id.*

In light of the foregoing, Plaintiff objects to each and every statement to the extent that it is not compliant with the Local Rules. Plaintiff respectfully requests this Court to use its discretion to disregard all noncompliant statements of fact. *See Cook Composites and Polymers Co. v. General Chauffeurs, Sales Drivers and Helpers Union, Local 179*, No. 11 C 7186, 2012 WL 4499058, at *1, n. 1 (N.D. Ill. Sept. 28, 2012) (where certain statements set forth improper argument rather than facts, the court refused to consider them).

**Parties**

1.      Plaintiff, Thomas Doporcyk, is a citizen of the State of Illinois. (Cplt. ¶25 (Doc 1-1)). Plaintiff was employed by Roundy's Illinois, LLC between December 7, 2013 and February 10, 2016. (Declaration of July Pfannenstiel, Director of Finance, Kroger Accounting Services Hutchinson ("Pfannenstiel Decl."), **Exhibit A**, ¶4; Declaration of Ken Koceja, IT Program Manager at Roundy's Supermarkets, Inc. ("Koceja Decl."), **Exhibit B**, ¶6).

**<u>RESPONSE:</u>  Subject to the Introductory Statement above, Undisputed.**

2.      Defendant, Roundy's Supermarkets, Inc., operates grocery stores in the States of Wisconsin and Illinois. (Declaration of Kathleen Toohey ("Toohey Decl."), Doc. 1-2, ¶3). Roundy's Supermarkets, Inc., is a corporation that is organized under the laws of the State of Wisconsin. It has its principal place of business in Milwaukee, Wisconsin. (Toohey Decl. ¶3).

**<u>RESPONSE:</u>  Subject to the Introductory Statement above, Undisputed.**

3.      Roundy's Supermarkets, Inc., operates grocery stores in the State of Illinois through Defendant, Roundy's Illinois, LLC. (Toohey Decl. ¶3). Roundy's Supermarkets, Inc., is the sole member of Roundy's Illinois, LLC. (Toohey Decl. ¶3). Roundy's Supermarkets and Roundy's Illinois are referred to collectively as "Roundy's."

**<u>RESPONSE:</u>  Subject to the Introductory Statement above, Undisputed.**

4.      Defendant, The Kroger Co., is an Ohio corporation with its principal place of business in Cincinnati, Ohio. (Corporation file detail report form the Illinois Secretary of State, **Exhibit C**). The Kroger Co. is referred to as "Kroger."

**RESPONSE: Subject to the Introductory Statement above, Undisputed.**

### Jurisdiction and Venue

5.     This Court has jurisdiction of this action under the Class Action Fairness Act ("CAFA") amendments to 28 U.S.C. § 1332. Minimal diversity of citizenship exists because plaintiff is an Illinois citizen, while none of the defendants is deemed to be a citizen of this state. Moreover, the matter in controversy, aggregated across all the putative class members' claims under the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/20, exceeds $,5000,000 because over 10,000 employees of Roundy's Illinois have punched in and out of work using Kronos timeclock terminals. (Toohey Decl. ¶7). Accordingly, jurisdiction exists under 28 U.S.C. § 1332(d)(6).

**RESPONSE: Subject to the Introductory Statement above, Undisputed.**

6.     Venue is proper in this district under 28 U.S.C. § 1391. Plaintiff asserts claims growing out of his employment by Roundy's Illinois, LLC at grocery stores in Gurnee, Illinois and Northbrook, Illinois, which are located within the Northern District of Illinois. (Cplt. ¶48).

**RESPONSE: Subject to the Introductory Statement above, Undisputed.**

### Kronos Timeclock Equipment Used in Roundy's Stores in Illinois

7.     Beginning in 2010, Kronos, Inc. ("Kronos") provided Roundy's with a timeclock system and software for tracking time worked by employees in Roundy's grocery stores in Illinois. In particular, Kronos sold Roundy's certain Kronos 4500 timeclock terminals and Kronos 4500 Touch ID units. Kronos also licensed its timeclock software, Workforce Central, for use by Roundy's in connection with its Illinois stores. (Declaration of Dean McIlwrath, Director of Product Management at Kronos ("McIlwrath Decl."), **Exhibit D**, ¶5; Koceja Decl. ¶¶5, 13).

**RESPONSE: Subject to the Introductory Statement above, Undisputed.**

8.     The Kronos 4500 timeclock terminal is typically installed at workplace locations. An employee punches in and out of work by swiping the employee's badge at the terminal or by typing in the employee's badge number (or preassigned PIN). (McIlwrath Decl. ¶6).

**RESPONSE: Subject to the Introductory Statement above, Undisputed.**

9.     The Touch ID unit is a separate device that attaches to the bottom of the timeclock terminal. If an employer has installed the Touch ID unit on the timeclock terminal, and an employee has been enrolled for biometric verification, the employee punches in and out of work by: a) first swiping his or her badge at the timeclock terminal (or typing in the employee's badge number); and b) then placing an enrolled finger on the Touch ID sensor. The operation of the timeclock terminal, Touch ID unit, and software verifies, by means of a configuring matching threshold, whether the employee swiping the badge is the person assigned to that badge in the Workforce Central System. (McIlwrath Decl. ¶7).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

10.     The Kronos 4500 timeclock terminals and Kronos 4500 Touch ID units provide verification, not identification. The employee identifies himself by swiping his badge or typing in his badge number at the terminal; the employee then verifies that he is in fact associated with the badge or badge number by scanning a portion of his fingertip with the Touch ID unit. Requiring a finger scan helps employers solve the problem of "buddy punching," which occurs when employees punch in and out for other employees. "Buddy punching" causes employees to be paid for time they have not worked. (McIlwrath Decl. ¶8; Kronos Touch ID System Installation Guide, **Exhibit E** (filed under seal), p. Kronos 00001861).

**RESPONSE: Objection; this statement is compound, constitutes a legal conclusion, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

### Enrolling Employees in the Kronos Touch ID System

11.     The Kronos Touch ID system allows an employee to roll two fingers for verification purposes. One finger is used for primary verification, and the second is used in case the primary finger is injured or not usable for some reason. (McIlwrath Decl. ¶10).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

12.     During enrollment, a supervisor accesses "Manager mode" at the timeclock terminal and then presses the employee enrollment soft key. The badge of the employee being enrolled is then swiped or his badge number is keyed in at the terminal, which enables the system to store and associate a partial finger scan with the employee's badge number. After the supervisor uses the terminal keypad to indicate which finger will be scanned and enrolled in the system, the employee places this finger on the verification sensor of the Touch ID unit. If the device captures

sufficient data relating to the finger scan, a screen appears on the timeclock terminal indicating the "quality" and "content" of the data. Quality is a measurement of the useful data found within the finger scan. Content is a measurement of the relative amount of fingertip data that was detected. If the Quality and Content scores are both greater than 60, the employee has been successfully enrolled for biometric[1] verification and the enrollment is then tested, with the employee scanning his finger again to verify that the test scan matches, as determined by the configuring matching threshold, the scan that was associated with the employee's badge during enrollment. (McIlwrath Decl. ¶11; Kronos Touch ID System Installation Guide (filed under seal), p. Kronos 00001915-1919).

**RESPONSE: Objection; this statement is compound, lacks foundation, constitutes a legal conclusion, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants are claiming the Touch ID system does not identify employees. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

13. Following enrollment, the employee may begin punching in and out immediately by placing a finger on the Touch ID unit attached to the terminal where he was enrolled. An enrolled employee performs verification at the terminal by swiping his badge or typing his badge number using the keypad at the terminal. The terminal then prompts the employee to place his finger on the Touch ID sensor. If the finger scan matches, based on the configured matching threshold, the stored template that is associated with the employee's badge or badge number, the punch is accepted. (McIlwrath Decl. ¶12).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Undisputed that the Touch ID system verifies whether an employee's fingerprint matches his or her identification badge.**

---

[1] The mathematical template created from the finger scan is referred to as a biometric template because it is based on information relating to the ridge patters that the Touch ID sensor measures in the employee's fingertip. (McIlwrath Decl. ¶11 n. 4). However, no image or impression of the fingerprint or finger is created or used by the Kronos 4500 timeclock terminals and Kronos 4500 Touch ID units. (McIlwrath Decl. ¶¶14-16).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants claim they do not collect, capture, or store fingerprint images. Kronos' documents specifically state that they create finger scan images. Exhibit 1 at Bates No. KRONOS_00001861.**

**Data Used by Touch ID Sensor to Create and Compare Finger Scans**

14.     Software within the Kronos Touch ID unit uses a pattern-based algorithm to scan and measure ridge patterns in a portion of the fingertip and then translate those patterns into a mathematical template (specifically, a series of hexadecimal data) that can be used to verify, based on the system's configured matching threshold, that the employee who has swiped his badge or entered his badge number is associated with that badge or number. The mathematical representation that is created from the employee's scan of the fingertip is encrypted. (McIlwrath Decl. ¶13). Roundy's does not have any equipment or technology that can be used to create or reverse engineer an employee's fingerprint from the mathematical finger-scan templates created by the Kronos Touch ID units. (Koceja Decl. ¶9).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. To the extent this statement relies on statements made by Ken Koceja, Plaintiff objects on the grounds that Koceja lacks personal knowledge as to the facts averred in his declaration. Exhibit 2, Dep. Tr. of Kenneth Koceja ("Koceja Tr."), at 48:18-49:17, 53:16-54:17, 71:22-72:16, 77:4-81:1, 84:4-15. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants are claiming the Touch ID system does not identify employees. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31). Disputed to the extent Defendants are claiming it is impossible to reverse-engineer an employee's fingerprint from the biometric information derived therefrom. Koceja Tr. at 63:5-8.**

15.     Kronos finger-scanning technology does not perform an optical scan or imaging of the finger. Instead, the Touch ID unit uses a low-level radiofrequency field in the sensor to measure ridge patterns in a portion of the fingertip. Whorls, loops, and points of intersection and divergence in the ridges of the scanned fingertip cause disturbances in the radiofrequency field, and those disturbances are measured and translated into the encrypted mathematical representation that is used for verification operations. No digital photograph, no form of image file (such as TIFF, JPEG, GIF, PNG, and RAW), and no form of impression is made, created or stored with respect to the employee's finger. (McIlwrath Decl. ¶14).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants claim they do not collect, capture, or store images of employees'**

**fingerprints. Kronos' documents specifically state that they create finger scan images. Exhibit 1 at Bates No. KRONOS_00001861. Disputed to the extent Defendants claim radiofrequency scans do not collect or capture biometric identifiers (i.e., fingerprints) or biometric information within the meaning of BIPA. RF finger scans are one mechanism used to perform "fingerprint" sensing as that term is commonly used, and used in BIPA. Exhibit 3, Setlak D.R. (2004) Advances in Fingerprint Sensors Using RF Imaging Techniques. In: Ratha N., Bolle R. (eds) Automatic Fingerprint Recognition Systems. Springer, New York, NY, pp. 28-29.**

16.     Unlike Integrated Automated Fingerprint Identification Systems ("IAFIS') used by government agencies for forensic and law enforcement purposes, Kronos Touch ID technology does not create or store fingerprints or images of fingerprints. (McIlwrath Decl. ¶15; Kronos Datasheet, "Privacy and the Kronos 4500 Touch ID Option," **Exhibit F,** filed under seal). IAFIS devices look at the entire rolled fingertip image to capture minutiae points in and around the core of the fingertip. The Touch ID sensor, by contrast, relies on ridge patterns in the fingertip that are captured when the employee holds the finger in a static position on the sensor. (McIlwrath Decl. ¶16; Kronos Datasheet). IAFIS devices employ minutiae-based comparison techniques that take, for example, scars into consideration. On the other hand, the Kronos Touch ID unit captures ridge patterns below the surface layer of the skin. The minutiae points and skin-surface conditions such as scars, cuts, and creases that are used by IAFIS devices are removed during the Kronos Touch ID process that produces the mathematical template for an employee. (McIlwrath Decl. ¶17).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Plaintiff further objects to this statement on the grounds that it is not relevant, as BIPA does not specify or require the specific method of capturing fingerprints. 740 ILCS 14/25(e). Subject to the Introductory Statement and these objections, Undisputed that the Kronos Touch ID radiofrequency fingerprint imaging technology is a different method of taking fingerprints than the IAFIS mechanical ink deposition fingerprinting. Exhibit 3 at 28 (discussing mechanical methods of fingerprint capture).**

17.     With Kronos Touch ID technology, the resolution required to create the mathematical template is 160 dots per inch. IAFIS devices, on the other hand, require a resolution of 500 dots per inch. While the Kronos Touch ID unit uses a solid-state sensor with an active area

of less than 3/4 of an inch by 3/4 of an inch to scan a portion of the fingertip, IAFIS devices require the full measure of the fingertip, typically a rolled fingertip image. (McIlwrath Decl. ¶18; Kronos Datasheet).

**RESPONSE:** **Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Plaintiff further objects to this statement on the grounds that it is not relevant, as BIPA does not specify or require the specific method of capturing fingerprints. 740 ILCS 14/25(e). Subject to the Introductory Statement and these objections, Undisputed that the Kronos Touch ID radiofrequency fingerprint imaging technology is a different method of taking fingerprints from IAFIS mechanical ink deposition fingerprinting. Exhibit 3 at 28 (discussing mechanical methods of fingerprint capture).**

18. Kronos finger-scanning technology does not meet the standards promulgated by the American National Standards Institute ("ANSI") and National Institute of Standards and Technology ("NIST") for IAFIS fingerprinting. (McIlwrath Decl. ¶19). The mathematical representation that is used by the Kronos Touch ID system is unsuitable for, and incompatible with, IAFIS identification systems. (McIlwrath Decl. ¶20).

**RESPONSE:** **Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Plaintiff further objects to this statement on the grounds that it is not relevant, as BIPA does not specify or require the specific method of capturing fingerprints and specifically excludes public entities, such as law enforcement, and their contractors, subcontractors, and agents from liability. 740 ILCS 14/25(e). Subject to the Introductory Statement and these objections, Undisputed that the Kronos Touch ID radiofrequency fingerprint imaging technology is a different method of taking fingerprints from IAFIS mechanical ink deposition fingerprinting. Exhibit 3 at 28 (discussing mechanical methods of fingerprint capture).**

19. The Touch ID units supplied to Roundy's and Kroger enable employees to perform verification that they are associated with the badge or badge number that is first swiped or keyed into a timeclock terminal. The units do not perform identification for employees. (McIlwrath Decl. ¶21).

**RESPONSE: Objection; this statement is compound, lacks foundation, constitutes a legal conclusion, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants are claiming the Touch ID system does not identify employees. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

20.     When an employee is enrolled in the Kronos Touch ID system, the timeclock terminal creates an index that links the employee's badge number to the stored mathematical template that is created by the Touch ID unit when the employee scans his fingertip during enrollment. If the enrollment is successful, during later punches, the timeclock terminal provides the index to the Touch ID unit, and the Touch ID unit compares the mathematical template from the finger scan performed during a punch to the mathematical template that is stored an associated with the index for the employee's badge number. (McIlwrath Decl. ¶22).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants are claiming the Touch ID system does not identify employees. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

21.     After enrollment, an employee's stored mathematical template is uploaded to the Workforce Central database and it is stored locally on the solid-state drives of the Touch ID units assigned to the employee's home group of timeclock terminals. (McIlwrath Decl. ¶23). The template is only temporarily stored on the timeclock terminals in the employee's home group. Likewise, the badge and employee number that are associated with a mathematical template are not stored locally in the Touch ID unit. Instead, during a punch, the badge swipe or badge number tells the timeclock terminal which index to provide to the attached Touch ID unit, and the index tells the Touch ID unit which stored mathematical template the fingers can performed during the punch should be compared to. (McIlwrath Decl. ¶23).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants are claiming the Touch ID system does not identify employees. Defendants**

admit in their Statement of Facts that the Touch ID system was used to identify employees. **(Dkt. No. 43 ¶ 31).**

22.     When an employee later swipes his badge at a timeclock terminal or keys in his badge number, he is prompted to place an enrolled finger on the Touch ID unit. The timeclock terminal provides the index associated with the badge to the Touch ID unit, and the Touch ID unit compares the mathematical template created from that scan to the mathematical template that is associated with the index. If the mathematical template created during the punch matches, based on the configured matching threshold, the stored mathematical template associated with the employee's badge number, the employee has successfully punched in or out. Otherwise, the employee is prompted to rescan his finger. (McIlwrath Decl. 24).

**RESPONSE: Objection; this statement is compound, lacks foundation, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants are claiming the Touch ID system does not identify employees. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

23.     The Touch ID system provided to Roundy's and Kroger does not enable employees to identify themselves with a finger scan. Instead, the system only compares the finger scan from a punch to the finger scan that is already stored and associated with the employee's badge. (McIlwrath Decl. ¶25).

**RESPONSE: Objection; this statement is compound, lacks foundation, constitutes a legal conclusion, and assumes facts not in evidence. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants are claiming the Touch ID system does not identify employees. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

24.     The Kronos timeclock terminals and Touch ID units provided to Roundy's and Kroger do not collect, capture, or use a retina or iris scan, voiceprint, or scan of face or hand geometry. (McIlwrath Decl. ¶26).

**RESPONSE: Subject to the Introductory Statement, Undisputed.**

**Timeclock Data Associated with Plaintiff**

25.     Plaintiff was employed by Roundy's between December 7, 2013 and February 10, 2016, first at a Roundy's grocery store in Gurnee, Illinois and later at a Roundy's grocery store in Northbrook, Illinois. During this time, Plaintiff punched in and out of work using the timeclock terminals and Touch ID sensors that Kronos provided to Roundy's. (Koceja Decl. ¶6).

**RESPONSE:  Subject to the Introductory Statement, Undisputed.**

26.     When plaintiff enrolled in the Kronos Touch ID system, he scanned a portion of his fingertip with the sensor of the Touch ID unit, which created a mathematical template that was indexed to his employee badge and badge number. This mathematical template was used to verify his ownership of the badge when he later swiped the badge to punch in and out. (Koceja Decl. ¶7).

**RESPONSE:  Objection; this statement is compound, lacks foundation, constitutes a legal conclusion, and assumes facts not in evidence. To the extent this statement relies on statements made by Ken Koceja, Plaintiff objects on the grounds that Koceja lacks personal knowledge as to the facts averred in his declaration. Koceja Tr. at 48:18-49:17, 53:16-54:17, 71:22-72:16, 77:4-81:1, 84:4-15. Subject to the Introductory Statement and these objections, Disputed to the extent Defendants claim RF finger scans do not collect or capture biometric identifiers (i.e., fingerprints) or biometric information. RF finger scans are one mechanism used to perform electrical fingerprint sensing, which uses electrical energy to detect fingerprint patterns. Exhibit 3 at 28-29. "RF-based sensors can be configured to generate images of the internal layers of the skin." *Id*. Disputed to the extent Defendants are claiming the Touch ID system does not identify employees. Defendants admit in their Statement of Facts that the Touch ID system was used to identify employees. (Dkt. No. 43 ¶ 31).**

27.     Following enrollment in the Touch ID technology, plaintiff's stored mathematical template was transmitted to the database of Kronos timeclock data that Roundy's maintains at its datacenter in Milwaukee, Wisconsin. This database was maintained by Roundy's using the Kronos Workforce Central application. A copy of the mathematical template was also stored on the Touch ID units attached to the two timeclock terminals at the stores where plaintiff worked. Copies of plaintiff's mathematical template were not and are not stored on any other device or system. (Koceja Decl. ¶7).

11

**RESPONSE: Objection; this statement is compound, lacks foundation, constitutes a legal conclusion, and assumes facts not in evidence. To the extent this statement relies on statements made by Ken Koceja, Plaintiff objects on the grounds that Koceja lacks personal knowledge as to the facts averred in his declaration. Koceja Tr. at 48:18-49:17, 53:16-54:17, 71:22-72:16, 77:4-81:1, 84:4-15. Subject to the Introductory Statement and these objections, Undisputed that Defendants collected, captured, stored, and transmitted Plaintiff's biometric identifiers and/or biometric information. Disputed to the extent that Defendants claim they did not transmit or store Plaintiff's biometric identifiers and/or biometric information in any other location. At some point in 2015, Defendants created a copy of the Kronos Workforce Central database, saved it to a hard drive, and sent the hard drive via FedEx – and without any additional protection – to Kronos in Massachusetts. Exhibit 4, Defs. Interrog. Resp. ¶ 2; Koceja Tr. at 112:2-113:11. The hard drive shipped via FedEx to Kronos contained the mathematical templates of Plaintiff and the putative Class. Koceja Tr. at 113:18-23.**

28.     When plaintiff punched in and out using the Kronos timeclock terminals and Touch ID units at Roundy's stores, the information associated with each punch was transmitted to Roundy's Workforce Central database in Milwaukee. This information is not now and has never been housed or maintained at another location. (Koceja Decl. ¶ 10).

**RESPONSE: Objection; this statement is compound, lacks foundation, constitutes a legal conclusion, and assumes facts not in evidence. To the extent this statement relies on statements made by Ken Koceja, Plaintiff objects on the grounds that Koceja lacks personal knowledge as to the facts averred in his declaration. Koceja Tr. at 48:18-49:17, 53:16-54:17, 71:22-72:16, 77:4-81:1, 84:4-15. Subject to the Introductory Statement and these objections, Undisputed that Defendants collected, captured, stored, and transmitted Plaintiff's biometric identifiers and/or biometric information. Disputed to the extent that Defendants**

claim they did not transmit or store Plaintiff's biometric identifiers and/or biometric information in any other location. At some point in 2015, Defendants created a copy of the Kronos Workforce Central database, saved it to a hard drive, and sent the hard drive via FedEx – and without any additional protection – to Kronos in Massachusetts. Exhibit 4, Defs. Interrog. Resp. ¶ 2; Koceja Tr. at 112:2-113:11. The hard drive shipped via FedEx to Kronos contained the mathematical templates of Plaintiff and the putative Class. Koceja Tr. at 113:18-23.

29.     The Kroger Co. ("Kroger") acquired Roundy's in a transaction that closed in December 2015. Beginning in December 2016, Roundy's timeclocks in Illinois stores were converted to the Kronos software that Kroger uses on its timeclock system. Since December 2016, information relating to employee timeclock punches at converted stores has been transmitted to Kroger's time and attendance database. (Koceja Decl. ¶11).

**RESPONSE: Objection; this statement is compound, lacks foundation, constitutes a legal conclusion, and assumes facts not in evidence. To the extent this statement relies on statements made by Ken Koceja, Plaintiff objects on the grounds that Koceja lacks personal knowledge as to the facts averred in his declaration. Koceja Tr. at 48:18-49:17, 53:16-54:17, 71:22-72:16, 77:4-81:1, 84:4-15. Subject to the Introductory Statement and these objections, Undisputed that Defendants collected, captured, stored, and transmitted Plaintiff's biometric identifiers and/or biometric information. Disputed to the extent that Defendants claim the timeclock conversion process did not start until December 2016. In January 2016, Roundy's and Kroger began working together to transfer historical employee data, including biometric timekeeping data, for approximately 22,000 employees – at least 11,000 of which worked in Illinois stores – from the Roundy's Kronos Workforce Central database to the Kroger database. Koceja Tr. at 19:23-20:16, 21:5-17, 22:3-7, 24:13-23, 25:11-18, 37:1-11.**

30.     Information relating to plaintiff's timeclock punches and plaintiff's mathematical template have never been transmitted to Kroger because his employment at Roundy's was

terminated in February 2016. (Koceja Decl. ¶11; Pfannenstiel Decl. ¶4). Plaintiff has never been employed by Kroger. (Pfannenstiel Decl. ¶4).

**RESPONSE: Objection; this statement is compound, lacks foundation, constitutes a legal conclusion, and assumes facts not in evidence. To the extent this statement relies on statements made by Ken Koceja, Plaintiff objects on the grounds that Koceja lacks personal knowledge as to the facts averred in his declaration. Koceja Tr. at 48:18-49:17, 53:16-54:17, 71:22-72:16, 77:4-81:1, 84:4-15. Subject to the Introductory Statement and these objections, Undisputed that Defendants collected, captured, stored, and transmitted Plaintiff's biometric identifiers and/or biometric information. Disputed to the extent that Defendants claim the timeclock conversion process did not start until December 2016. In January 2016, Roundy's and Kroger began working together to transfer historical employee data, including biometric timekeeping data, for approximately 22,000 employees – at least 11,000 of which worked in Illinois stores – from the Roundy's Kronos Workforce Central database to the Kroger database. Koceja Tr. at 19:23-20:16, 21:5-17, 22:3-7, 24:13-23, 25:11-18, 37:1-11.**

31.     There have been no breaches or unauthorized access to the database housing the data that Roundy's used to identify employees when they punched in and out of Illinois stores. (Koceja Decl. ¶12).

**RESPONSE: Subject to the Introductory Statement, Undisputed to the extent Roundy's used the Kronos Touch ID system to identify employees. Disputed to the extent that "[t]here have no breaches or unauthorized access" to the relevant database(s). At his deposition, Mr. Koceja was unable to confirm or deny whether the timekeeping devices, software, or systems had been breached or otherwise hacked or exposed. Koceja Tr. at 93:6-94:12.**

Date:   May 18, 2018                    Respectfully Submitted,

                                        */s/ Haley R. Jenkins*
                                        Ryan F. Stephan

Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
hjenkins@stephanzouras.com

Benjamin H. Richman
J. Eli Wade-Scott
**EDELSON PC**
350 N. LaSalle Street, 13th Floor
Chicago, Illinois 60654
312.589.6370
brichman@edelson.com
ewadescott@edelson.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS DOPORCYK, individually, and on** | ) | |
| **behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 17-cv-05250** |
| | ) | |
| **v.** | ) | |
| | ) | **Hon. Thomas M. Durkin** |
| **ROUNDY'S SUPERMARKETS, INC., and** | ) | |
| **ROUNDY'S ILLINOIS, LLC, d/b/a** | ) | |
| **MARIANO'S, THE KROGER COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RULE 56.1(b)(3)(C) STATEMENT OF**
**ADDITIONAL MATERIAL FACTS**

Plaintiff, by and through counsel, submits the following statement of additional material facts pursuant to Local Rule 56.1(b)(3)(C).

1.     Plaintiff Thomas Doporcyk began working for Roundy's Illinois, LLC, a subsidiary of Roundy's Supermarkets, Inc. (collectively, "Roundy's"), in December 2013 at the Gurnee, Illinois Mariano's as a Pharmacy Manager and transferred to the Northbrook, Illinois, store in 2015. Exhibit 5, Decl. of Thomas Doporcyk ("Doporcyk Decl.") ¶ 1.

2.     In December 2015, The Kroger Company, Inc. ("Kroger"), purchased Roundy's Supermarkets, Inc., and Roundy's Illinois, LLC (collectively, "Roundy's"). Exhibit 2, Dep. Tr. of Kenneth Koceja ("Koceja Tr.") at 16:25-17:1.

3.     Kroger, through Roundy's, currently operates approximately 44 Mariano's stores in Illinois. Koceja Tr. at 18:14-18.

4.   Roundy's requires, as a condition of employment, that its employees – including Plaintiff – be enrolled in their employee database, Kronos Workforce Central, and further requires that employees provide them with a scan of their fingerprints on the Kronos Touch ID machine. Dkt. No. 1-1 ¶¶ 3, 41, 51, 53, ; Doporcyk Decl. ¶ 2; Koceja Tr. at 30:14-20.

5.   Beginning in 2015, Kroger likewise required all hourly employees and certain salaried employees to be enrolled in Kronos Workforce Central. Koceja Tr. at 31:15-20.

6.   In January 2016, Roundy's and Kroger began working together to transfer historical employee data, including biometric timekeeping data, for approximately 22,000 employees – at least 11,000 of which worked in Illinois stores – from the Roundy's Kronos Workforce Central database to the Kroger database. Koceja Tr. at 19:23-20:16, 21:5-17, 22:3-7, 24:13-23, 25:11-18, 37:1-11.

7.   Employees are required as a condition of employment to be "biometrically enrolled" in the Kronos 4500 timeclock. Exhibit 6, Bates No. ROUNDYS 000159.

8.   To enroll employees in the Kronos Workforce Central database, Defendants first have a manager of the location or store assign an identification badge to the new employee. Exhibit 7, Bates Nos. ROUNDYS 000163-169.

9.   The employee enters that badge number into the Kronos Workforce Central application on the Kronos 4500 timeclock and is enrolled in the timeclock itself. Exhibit 7, Bates Nos. ROUNDYS 000163-169.

10.   Next, Defendants require employees to place their finger on the sensor using the "lock, drop, and hold" method. Exhibit 7, Bates Nos. ROUNDYS 000163-169.

11.     This method requires employees to position the entire first joint of the finger against the ridge lock, drop the finger so that the fingertip touches the sensor, and hold the finger on the sensor until the timeclock beeps. Exhibit 7, Bates Nos. ROUNDYS 000163-169.

12.     Employees are required to position the entire first joint of the finger in the center of the sensor and apply moderate pressure when making contact with the sensor. Exhibit 7, Bates Nos. ROUNDYS 000163-169.

13.     Employees are encouraged to enroll two fingers in the biometric timeclock. Exhibit 7, Bates Nos. ROUNDYS 000163-169.

14.     The Kronos Touch ID system performs radiofrequency ("RF") finger scans. Dkt. No. 43 ¶ 15.

15.     RF finger scans are commonly understood as a method of electrical fingerprint sensing. Exhibit 3, Setlak D.R. (2004) Advances in Fingerprint Sensors Using RF Imaging Techniques. In: Ratha N., Bolle R. (eds) Automatic Fingerprint Recognition Systems. Springer, New York, NY, pp. 28-29.

16.     Electrical fingerprint sensing methods use electrical energy to detect fingerprint patterns. Exhibit 3, pp. 28-29.

17.     RF imaging of fingerprints can measure a higher-quality representation of the ridge patterns in a fingerprint from beneath the surface of the skin. Exhibit 3, p. 35.

18.     RF-based fingerprint sensors can capture fingerprint images beneath the skin surface. Exhibit 3, p. 51.

19.     Defendants collect what Kronos refers to as "biometric templates" using a three-step process. Koceja Tr. at 61:17-62:24; Exhibit 1 at KRONOS_00001861

20.     First, an employee scans their finger on the Kronos Touch ID system, which collects the "fingerprint image" of the employees' finger. Koceja Tr. at 61:17-20; Exhibit 8, Bates No. ROUNDYS 161; Exhibit 9, The Kronos 4500 Touch ID Terminal.

21.     The fingerprint image is then converted into a mathematical representation of the fingerprint data, referred to as a "finger scan image" or a "biometric template." Exhibit 1, Bates No. KRONOS_00001861.

22.     This is done by an algorithm which converts the imagine into a mathematical representation of up to 450 characters. Koceja Tr. at 61:11-15, 62:15-24.

23.     The "biometric template" is stored in the Kronos Workforce Central database, which was maintained in Milwaukee, Wisconsin, prior to Kroger purchasing Roundy's and in Blue Ash, Ohio, after Kroger purchased Roundy's. Koceja Tr. at 66:12-67:9, 68:7-10.

24.     Each time Plaintiff arrived to and departed from a Mariano's store, Defendants required him to scan his fingerprint when clocking in and out, despite being a salaried (as opposed to hourly) employee. Dkt. No. 1-1 ¶ 53; Doporcyk Decl. ¶ 3.

25.     To clock in and out of work, Plaintiff would first swipe his employee ID badge or type in his employee ID number. Doporcyk Decl. ¶ 3.

26.     Then, Defendants required him to scan his finger on the Kronos Touch ID device, which uses "biometrics functionality" to verify the identity of the employee using a biometric template. Exhibit 1, Bates No. KRONOS_00001861.

27.     At some point in 2015, Defendants created a copy of the Kronos Workforce Central database, saved it to a hard drive, and sent the hard drive via FedEx – and without any additional protection – to Kronos in Massachusetts. Exhibit 4, Defs. Interrog. Resp. ¶ 2; Koceja Tr. at 112:2-113:11.

28.     The hard drive shipped via FedEx to Kronos contained the mathematical templates of Plaintiff and the putative Class. Koceja Tr. at 113:18-23.

29.     When Defendants' biometric timekeeping devices malfunction, they would contract with a third-party vendor to replace the device. Koceja Tr. at 85:14-86:2.

30.     After the third-party vendor repaired the biometric timekeeping device, it would be reset to its original settings. Koceja Tr. at 86:13-23.

31.     Defendants do not know whether the third-party vendor could access the biometric data stored on the timekeeping devices. Koceja Tr. at 87:2-7.

32.     Defendants never informed Plaintiff of the specific purposes or length of time for which they collected, captured, stored, used, and/or disseminated his biometric identifiers and/or information. Dkt. No. 1-1 ¶¶ 6, 54, 106, 114; Doporcyk Decl. ¶ 4.

33.     Defendants never informed Plaintiff of any biometric data retention policy they developed, nor did they ever inform him whether they will ever permanently delete his biometric identifiers and/or information. Dkt. No. 1-1 ¶¶ 6, 43, 46, 55, 107, 115; Doporcyk Decl. ¶ 5.

34.     Plaintiff never received or signed a written release allowing any Defendant to collect, capture, store, use, or disseminate his biometric identifiers and/or information. Dkt. No. 1-1 ¶¶ 6, 42, 56-57, 104; Doporcyk Decl. ¶ 6.

Date:   May 18, 2018                          Respectfully Submitted,

                                              /s/ Haley R. Jenkins
                                              Ryan F. Stephan
                                              Haley R. Jenkins
                                              **STEPHAN ZOURAS, LLP**
                                              205 N. Michigan Avenue
                                              Suite 2560
                                              Chicago, Illinois 60601
                                              312.233.1550
                                              312.233.1560 *f*
                                              rstephan@stephanzouras.com

hjenkins@stephanzouras.com

Benjamin H. Richman
J. Eli Wade-Scott
**EDELSON PC**
350 N. LaSalle Street, 13th Floor
Chicago, Illinois 60654
312.589.6370
brichman@edelson.com
ewadescott@edelson.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on May 18, 2018, I filed the attached with the Clerk of

the Court using the electronic filing system which will send such filing to all attorneys of record.


   */s/Haley R. Jenkins*